**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**JED ALAND WIMER,**

               Plaintiff,

**v.**

                              **CIVIL ACTION NO.: 3:18-CV-43**
                              **(GROH)**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

               Defendant.

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

This case arises from the denial of Plaintiff Jed Aland Wimer's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), Mary C. Peltzer, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Nancy A. Berryhill ("Commissioner"), the acting Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 18] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 22] be **GRANTED**.

## II.   <u>PROCEDURAL HISTORY</u>

On or about September 19, 2014, Plaintiff filed his claim for DIB, with an alleged onset date of disability of September 16, 2014. R. 62. Plaintiff's application for DIB was initially denied on January 27, 2015, and upon reconsideration on June 15, 2015. R. 95, 102. After these denials, Plaintiff requested a hearing before an ALJ. R. 109. On January 9, 2017, a hearing was held before the ALJ. R. 39. The ALJ presided over the hearing in Charlottesville, Virginia. <u>Id.</u> Plaintiff, represented by Michael L. Richie, Esq., appeared and testified in person. <u>Id.</u> Chane Lanson, a vocational expert, appeared by telephone and testified at the hearing. <u>Id.</u> On April 12, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time since September 16, 2014, the alleged onset of Plaintiff's disability. R. 21, 32. On February 6, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

On March 28, 2018, Plaintiff, through counsel, Roger A. Richie, Sr., Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on September 4, 2018. Answer, ECF No. 12; Admin. R., ECF No. 13. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 18; Def.'s Mot. Summ. J., ECF No. 22. Neither party filed a response. Oral argument on the parties' motions was held before the undersigned on March 6, 2019.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, and having heard the parties' oral argument, the undersigned now issues the following Report and Recommendation.

## III.   <u>BACKGROUND</u>

### A.   Personal History

Plaintiff was born on April 21, 1976, and was thirty-eight years old at the time he made his application for DIB. R. 43. He is 5'9" and weighs approximately 250 pounds. <u>Id.</u> Plaintiff is single and does not have children. <u>Id.</u> He lives with his girlfriend in a multi-level house. R. 43–44. Plaintiff asserts that he last worked on September 14, 2014 as a laborer for Allegheny Wood Products. R. 44. Plaintiff alleges that he is permanently and totally disabled due to Charcot-Marie-Tooth disease, a genetic, degenerative nerve disease that has no known cure. R. 62, 71, 83.

### B.   Medical History

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. ECF No. 15, at 2. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. <u>See</u> Pl.'s Mem. Supp. Mot. Summ. J. No. ECF 19, at 3–8; Def.'s Brief Supp. Mot. Summ. J. ECF No. 23, at 3–9.

3

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional

capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.   ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since the September 16, 2014, alleged onset date of Plaintiff's disability. R. 23. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: Charcot-Marie-Tooth disease, obesity, headaches, and osteoarthritis. Id. At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. R. 24–25. At step four, the

ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20

C.F.R. § 404.1567(a) with the following limitations

> occasional stairs and ramps; no ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and no crawling; moderate noise environment; no reaching overhead; frequent handling and fingering; and occasional exposure to extreme cold, vibration, respiratory irritants such as dust and fumes, and workplace hazards such as dangerous moving machinery but no exposure to unprotected heights.

R. 25.[1] The ALJ then determined that Plaintiff is unable to perform any past relevant work.

R. 30. At step five, the ALJ concluded that based on Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform. R. 31. Thus, the ALJ found that Plaintiff is not disabled

within the meaning of the Social Security Act. R. 32.

## VI.   DISCUSSION

### A.   Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited

to determining whether the ALJ applied the proper legal standards and whether the ALJ's

factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453,

1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by

means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d

514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not

supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Substantial evidence is "such relevant evidence as a reasonable mind might accept to

support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229

---

[1] For the purposes of her analysis, the ALJ determined that Plaintiff was thirty-eight years old on the alleged onset date of disability and therefore, a "younger individual" under the regulations. R. 31.

(1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

**B.      Contentions of the Parties**

Plaintiff contends that the ALJ committed two errors in her decision. ECF No. 19, at 8, 13. Specifically, Plaintiff submits that: (1) "the ALJ and Commissioner erred in their determinations that claimant is capable of performing sedentary work" and (2) "the ALJ's finding that [Plaintiff] does not meet listing subsection 11.14A, Peripheral Neuropathy, is error." Id. at 8, 13. On account of these errors, Plaintiff requests that the Court reverse the ALJ's decision and award other proper relief. Id. at 14.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed as a matter of law. ECF No. 22, at 1. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that: (1) substantial evidence supports the Commissioner's final decision that Plaintiff was capable of performing sedentary work and was not disabled and (2) substantial evidence supports the ALJ's finding that Plaintiff's Charcot-Marie-Tooth impairment did not satisfy the criteria for listing 11.14. ECF No. 23, at 9, 14. Accordingly, the Commissioner requests

that the Court affirm the ALJ's decision that Plaintiff was not disabled from September 2014 through April 2017. Id. at 15.

**C.     Whether the ALJ's Decision Was Conducted in Conformity with the Law and Is Supported by Substantial Evidence**

Because meeting a listing at step three of the evaluation process results in an automatic determination of disability, the undersigned will first consider Plaintiff's contention that the ALJ erred in concluding that he did not meet listing 11.14A, Peripheral Neuropathy. Then, the undersigned will proceed to Plaintiff's contention that the ALJ's RFC determination was erroneous.

**1.  The ALJ's Determination That Plaintiff Does Not Meet Listing 11.14A, Peripheral Neuropathy, Was Determined in Conformity with the Law and Is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's finding that Plaintiff does not meet listing 11.14A was error because (1) Plaintiff suffers from Charcot-Marie-Tooth disease, (2) Plaintiff has to use braces on his feet, (3) Plaintiff experiences pain and weakness in his arms and hands, and (4) Plaintiff's physicians, Zaid Al-Qudah, M.D., and Glenn Deputy, M.D., opined that Plaintiff experiences disorganization of motor function as described in listing 11.14A. ECF No. 19, at 13.

At step three of the sequential evaluation process, a claimant bears the burden of proving that his medical impairments meet or equal the severity of an impairment recorded in the "Listing of Impairments," located at 20 C.F.R. Part 404, Subpt. P, App. 1. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

When the record contains evidence that a claimant's severe impairment and corresponding symptoms may meet a listing, an ALJ is generally required to identify the relevant listing and compare the claimant's symptoms to the listing's criteria. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). However, point-by-point analysis is not necessary in every case. See Williams v. Astrue, No. 5:11-CV-409, 2012 WL 4321390, at *3 (E.D.N.C. Sept. 20, 2012). If the ALJ's decision makes clear the listings the ALJ considered and the basis upon which the ALJ found that the claimant did not meet or equal them, then the ALJ's decision does not frustrate meaningful review, and a court may determine whether there is substantial evidence to support the ALJ's determination. See id.; see also Cook, 783 F.2d at 1173 ("The ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of [the claimant's] symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination."); Ours v. Astrue, No. 1:07cv112, 2008 WL 4467161, at *14 (N. D. W. Va. Sept. 30, 2008) (adopting Report and Recommendation which applied the substantial evidence standard on review of the ALJ's listing determination).

Listing 11.14A states that peripheral neuropathy is a disabling condition if it is characterized by the "[d]isorganization of motor function in two extremities . . ., resulting in an extreme limitation . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.14A. "Inability to stand up from a seated position means that once seated [the claimant is] unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two

canes." Id. at 11.00D2a. "Inability to maintain balance in a standing position means that [the claimant is] unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes." Id. at 11.00D2b. Finally,

> Inability to use [the] upper extremities means that [the claimant has] a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits [his] ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements. Inability to perform fine and gross motor movements could include not being able to pinch, manipulate, and use [his] fingers; or not being able to use [his] hands, arms, and shoulders to perform gross motor movements, such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling.

Id. at 11.00D2c.

In Plaintiff's case, the ALJ considered listings 11.14A and 11.14B[2] in her decision. R. 24–25. She concluded that Plaintiff did not meet listing 11.14A because (1) Plaintiff consistently presented with normal strength and range of motion of the upper and lower extremities, (2) Plaintiff testified that he is able to stand up from a seated position, and (3) the evidence demonstrated that Plaintiff had been able to ambulate largely normally and with no deficits since he obtained foot braces in early 2016. R. 24.

The ALJ's determination that Plaintiff does not meet listing 11.14A is supported by substantial evidence. Listing 11.14A contains three independent ways a claimant can meet the listing: the claimant has an extreme limitation (1) in standing from a seated position, (2) in maintaining balance while standing and walking, OR (3) in the use of his

---

[2] Plaintiff makes no argument with respect to the ALJ's determination that he does not meet listing 11.14B.

upper extremities. First, Plaintiff testified that he can get in and out of chairs on his own. R. 50–51. This substantially supports the ALJ's conclusion that Plaintiff does not meet listing 11.14A on account of Plaintiff having an extreme limitation (i.e. the need for the assistance of another person or an assistive device, such as a walker, two crutches, or two canes)[3] in standing from a seated position and maintaining an upright position.

Second, the medical evidence indicates that Plaintiff ambulated largely normally after obtaining his foot braces. R. 24, 506 (March 14, 2016, Plaintiff able to walk normally with braces), 502 (June 27, 2016, Plaintiff walks normally with braces), 498 (July 27, 2016, Plaintiff walks normally with braces), 495 (August 24, 2016, Plaintiff walks normally with braces), 492 (October 5, 2016, Plaintiff walks normally with braces), 488 (November 4, 2016, Plaintiff walks normally with braces), 483 (December 5, 2016, Plaintiff walks normally with braces). The evidence also demonstrates that Plaintiff consistently had normal strength and range of motion ("ROM") in his lower extremities ("LE") during the relevant period. R. 24, 308–09 (manual motor testing for Plaintiff's LE was normal even though Plaintiff reported subjective LE weakness), 358–59 (February 11, 2015, normal strength in LE; full ROM), 362–63 (March 26, 2015, normal strength in LE; full ROM), 373–75 (May 14, 2015, Plaintiff positive for muscle weakness but has normal strength in LE; full ROM), 410 (July 2, 2015, normal strength in LE), 483 (5/5 LE strength), 487 (5/5 LE strength), 491 (5/5 LE strength), 494 (5/5 LE strength), 497 (5/5 LE strength), 501 (5/5 LE strength), 505 (5/5 LE strength). Furthermore, as the ALJ noted later in her decision, Plaintiff testified that he can stand for about an hour. R. 26, 46. This evidence substantially

---

[3] The undersigned notes that Plaintiff reported that he used no assistive device in his Adult Function Report, dated October 22, 2014, which was completed before he received foot braces. R. 198–99. However, at the hearing, Plaintiff testified that he had been using a cane to walk for about one week. R. 48. The ALJ noted this in her decision. R. 26.

supports the ALJ's conclusion that Plaintiff does not meet listing 11.14A on account of Plaintiff having an extreme limitation (i.e. the need for the assistance of another person or an assistive device, such as a walker, two crutches, or two canes) in maintaining balance while standing or walking.

Finally, the medical evidence demonstrates that Plaintiff has maintained largely normal upper extremity ("UE") strength and range of motion throughout the relevant period. R. 24, 27, 309 (September 29, 2014, normal strength, deep tendon reflexes, and sensation in UE; full ROM), 358 (February 11, 2015, bilateral UE strength is normal; thumb/index, middle finger, and ulnar hand sensation is normal bilaterally; full ROM), 362 (March 26, 2015, bilateral UE strength is normal; thumb/index, middle finger, and ulnar hand sensation is normal bilaterally; full ROM), 374–75 (May 14, 2015, bilateral UE strength is normal; thumb/index, middle finger, and ulnar hand sensation is normal bilaterally), 411 (July 2, 2015, normal UE strength), 419 (August 13, 2015, normal UE strength), 383 (September 16, 2015, 5/5 UE strength), 483 (December 5, 2016, 5/5 UE strength and normal bulk and tone).

The ALJ noted that Plaintiff has electrodiagnostic findings consistent with Charcot-Marie-Tooth. R. 27. She also noted that Plaintiff presented in more recent examinations with reduced sensations to vibration and pinprick and that Plaintiff has inconsistent deep tendon reflexes. R. 27–28, 483, 487, 491, 494, 498, 501, 505–06, 509. Presented with conflicting evidence, she ultimately concluded that Plaintiff "has retained largely normal strength, with no deficits of grip strength noted, and largely normal range of motion and muscle bulk and tone throughout despite the electrodiagnostic findings." R. 28. The ALJ also noted in her decision that Plaintiff testified that he can lift or carry about ten pounds

12

and is able to reach to get things out of kitchen cabinets. R. 26, 46, 50. Ultimately, it is not this Court's role to reweigh conflicting evidence. See Johnson, 434 F.3d at 653. The undersigned concludes that the ALJ provided substantial evidence to support her conclusion that Plaintiff does not meet listing 11.14A on account of Plaintiff having an extreme limitation in the use of his upper extremities. In sum, the ALJ's determination that Plaintiff does not meet listing 11.14A was determined in conformity with the law and is supported by substantial evidence.

### 2. The ALJ's Determination That Plaintiff Maintains the RFC for Sedentary Work Was Determined in Conformity with the Law and Is Supported by Substantial Evidence

Plaintiff alleges two errors in the ALJ's RFC assessment which concluded that Plaintiff has the RFC to perform a reduced range of sedentary work. First, Plaintiff alleges that the ALJ improperly discounted Plaintiff's credibility when she concluded that Plaintiff's alleged symptoms are not entirely consistent with the medical and other evidence in the record. See ECF No. 19, at 8–10. Second, Plaintiff alleges that the ALJ erred by giving little weight to Plaintiff's treating physicians' opinions and great weight to the state agency consultants' opinions. Id. at 10–13. The undersigned will consider these issues one at a time.

### a. Plaintiff's Credibility

Plaintiff contends that there are objective findings throughout the record to corroborate Plaintiff's subjective complaints regarding his limitations, including his complaints of severe pain in his legs and back, gait difficulties, and difficulties with using his hands. ECF No. 19, at 9–10.

Because the ALJ has the opportunity to observe the demeanor of the claimant, the ALJ's observations concerning the claimant's credibility are given great weight. Shively,

739 F.2d at 989–90. This Court has determined that "[a]n ALJ's credibility determinations are 'virtually unreviewable' . . . ." Ryan v. Astrue, No. 5:09CV55, 2011 WL 541125, at *3 (N. D. W. Va. Feb. 8, 2011). "If the ALJ meets . . . her basic duty of explanation, then 'an ALJ's credibility determination [will be reversed] only if the claimant can show [that] it was 'patently wrong.'" Criss v. Comm'r of Soc. Sec., No. 5:16CV86, 2017 WL 2730647, at *3 (N. D. W. Va. June 26, 2017) (alteration in original) (citations omitted). The ALJ's "determination . . . must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Ultimately, "it is the ALJ's duty, not this Court's, to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work." Redditt v. Colvin, No. 7:13-cv-391, 2014 WL 2800820, at *6 (W. D. Va. June 18, 2014).

After going through Plaintiff's subjective complaints, the ALJ determine that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 26. With respect to Plaintiff's subjective complaints of pain and numbness in his back and extremities, the ALJ discussed Plaintiff's medical records to support her credibility determination. R. 27. Plaintiff's ultrasound showed inflammatory changes and osteoarthritic changes in his elbows. Id., R. 489. However, x-rays of Plaintiff's left shoulder and bilateral knees were normal, and MRI imaging of Plaintiff's thoracic and lumbar spine showed only mild to minimal degenerative changes. R. 27, 322–25, 351, 353–55.

Additionally, the ALJ discussed Plaintiff's pain management history and the objective medical records related to that treatment. R. 27. At a pain management evaluation in September 2014, Dr. Deputy found normal strength, manual motor testing, deep tendon reflexes, and sensation for Plaintiff's UE and LE. Id., 309–10. In February 2015, at a pain management evaluation with Mohamed Fahim, M.D., findings of normal strength, range of motion, and sensation in Plaintiff's UE and LE were noted. R. 27, 358–59. In September 2015, at a neurosurgery consultation with Bill Underwood, M.D., Plaintiff presented with normal muscle strength, muscle tone, and symmetric deep tendon reflexes in both his UE and LE. R. 27, 383.

The ALJ also discussed Plaintiff's conservative treatment and the records indicating that treatment was providing Plaintiff improvement in his symptoms. R. 28. In September 2014, Plaintiff reported some improvement in his symptoms as a result of taking gabapentin. R. 28, 308, 321, 327. In September 2015, Plaintiff reported improvement as a result of taking tramadol and flexeril. R. 28, 381. Trigger point injections of his neck in 2016 significantly improved Plaintiff's neck pain. R. 28, 500. Additionally, in 2016, Plaintiff's gait and ability to walk improved after he was fitted for foot braces. R. 28, 504 (March 14, 2016, Plaintiff reports that with his foot braces, "[h]e is able to walk and go whenever he wants to. He is not getting the weakness and the heaviness in his legs, as he used to."); see also Section VI.C.1 (Plaintiff had a normal gait after getting his foot braces).

Finally, the ALJ discussed Plaintiff's activities of daily living. Plaintiff is able to perform personal care, needing only minor assistance stepping into and out of the shower, and he is able to prepare simple meals for himself. R. 29, 48, 193–94. Plaintiff

reports that he reads, watches TV, takes care of his cat, visits his landlord, and sometimes rides a Gator to look at his landlord's cows. R. 29, 51, 193, 196.

After a careful review of the ALJ's decision and the evidence of record, the undersigned finds that the ALJ was sufficiently specific to make clear her reasoning in finding Plaintiff's assertions concerning the intensity, duration, and limiting effects of his symptoms not fully persuasive. Because the ALJ met her basic duty of explanation, the ALJ's credibility determination will only be reversed if it is patently wrong. See Criss, 2017 WL 2730647, at *3. Here, Plaintiff fails to satisfy this high burden. Accordingly, the Court concludes that the ALJ's credibility determination is supported by substantial evidence.

### b.  Treating Physicians' Opinions

Plaintiff also alleges error on account of the ALJ's decision to give Plaintiff's treating physicians' opinions little weight. ECF No. 19, at 8. Plaintiff avers that the ALJ based this decision almost entirely on the RFCs of the state agency consultants and ignored all other evidence. Id. at 12. Plaintiff contends that the ALJ was required to give his treating physicians' opinions great weight because they are consistent with the medical evidence and there is not significant medical evidence contrary to those opinions. Id.

An ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N. D. W. Va. July 22, 2015) (emphasis added); see 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). When evaluating medical opinions, the ALJ must "go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions . . . and explaining the rationale for doing so." Smith v. Barnhart,

395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record supports the opinions or how the opinions are consistent with the medical evidence." Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016).

If a treating source's medical opinion on the nature and severity of a claimant's impairments is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the case record, it is given controlling weight. 20 C.F.R. § 404.1527(c)(2). "While the testimony of a treating physician is often accorded greater weight, this 'treating physician rule . . . does not require that the [treating physician's] testimony be given controlling weight.'" Criss, 2017 WL 2730647, at *3 (emphasis added) (quoting Anderson v. Comm'r of Soc. Sec., 127 F. App'x 96, 97 (4th Cir. 2005)). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, then it should be accorded significantly less weight." Thompson v. Astrue, 442 F. App'x 804, 808 (4th Cir. 2011) (quoting Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

When a treating source opinion is not given controlling weight, the ALJ is to apply the six regulatory factors in determining the weight to give the medical opinion. 20 C.F.R. § 404.1527(c)(2). Those six factors are: (1) the examining relationship, (2) the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Social Security Ruling 96-2p specifically addresses the ALJ's duty of explanation when a treating source opinion is not given controlling weight and the ALJ's decision is a denial of benefits, stating that:

17

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ does not need to specifically list and address each factor in his decision, so long as sufficient reasons are given for the weight assigned to the medical opinion. See Pinson v. McMahon, No. 3:07-1056-PMD-JRM, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009) (holding that the ALJ properly analyzed a treating physician's medical opinion even though he did not specifically address each regulatory factor). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (citations omitted) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992)).

In this case, the ALJ was required to evaluate two[4] medical opinions from Plaintiff's treating neurologists, Drs. Deputy and Al-Qudah. On March 26, 2015, Dr. Deputy opined that Plaintiff can sit for 5 minutes at one time, can stand for 5 or less minutes at one time, can sit/stand/walk for less than 2 hours in an 8-hour workday, can occasionally lift less than 10 pounds but never lift 10 pounds or more, can never look down/turn his head/look up, can never twist/stoop/crouch/squat/climb ladders/climb stairs, can use his

---

[4] The ALJ technically refers to three opinions in her decision because Dr. Deputy mentions in a medical note that Plaintiff is "medically disabled," an issue solely reserved to the Commissioner. R. 295; SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). The remainder of this medical note contains no opinions on Plaintiff's functional limitations.

hands/fingers/arms for grasping/turning/fine manipulation/reaching overhead for 0% of the workday, and is incapable of even "low stress" jobs. R. 345–47. On January 18, 2017, Dr. Al-Qudah opined that Plaintiff can sit and stand for only 5 minutes at one time, can sit for about 2 hours and can stand/walk for less than 2 hours in an 8-hour work day, can never lift/carry any amount of weight (not even less than 10 pounds), can rarely look down/turn his head/look up, can never twist/stoop/crouch/squat/climb ladders/climb stairs, can use his hands/fingers/arms to grasp/turn/fine manipulation/reaching for 10% or less of the workday, and is incapable of even "low stress" jobs. R. 465–67.[5]

The ALJ assigned little weight to these opinions for several reasons. First, the ALJ noted that these opinions are not consistent with the overall objective findings of record. Specifically, the findings of sensory deficits of the left lower extremity and upper extremities and deep tendon reflexes were inconsistent with the findings of largely normal strength, range of motion, and gait (after Plaintiff received his foot braces). R. 29–30. Second, the ALJ noted that the opinions are not consistent with Plaintiff's overall conservative treatment history, including the improvements Plaintiff reported in response to that conservative treatment (namely, the medications, injections, and foot braces) and the lack of surgeries and frequent emergency room visits. R. 30. Third, the ALJ concluded that the opinions regarding Plaintiff's tolerance for stress and persistence in attention and concentration were not supported by any reports of mental symptoms in the record.[6] Id.

---

[5] The undersigned notes that Plaintiff cites to a version of this opinion which was not before the ALJ. R. 6–15. As the Commissioner points out, the new version offers the same conclusions with additional statements. See ECF No. 23, at 8–9. The new version of Dr. Al-Qudah's opinion was presented to the Appeals Council, which determined that it did not show a reasonable probability that it would change the outcome of the decision. R. 2. Plaintiff did not argue that this finding is error, nor has Plaintiff argued that this Court should consider the new version of Dr. Al-Qudah's opinion that was not presented to the ALJ. Accordingly, the undersigned evaluates the ALJ's decision based on the opinion of Dr. Al-Qudah that was before the ALJ.
[6] Plaintiff does not challenge this finding by the ALJ in his memorandum. ECF No. 8–9.

Finally, the ALJ determined that the opinions are not consistent with Plaintiff's reported activities of daily living. Id. On these same grounds, the ALJ gave little weight to the state agency consultant who opined that Plaintiff is capable of a reduced range of light work, but gave great weight to the state agency consultants who opined that Plaintiff is capable of a reduced range of sedentary work. Id.

When discussing the opinions of Drs. Deputy and Al-Qudah, the ALJ acknowledged that Dr. Deputy was Plaintiff's former neurologist and Dr. Al-Qudah is Plaintiff's current neurologist, specialists who treated Plaintiff. R. 29. As detailed above in this Report and Recommendation, the ALJ supported his conclusions that Plaintiff had largely normal strength, range of motion, and gait with ample evidence in the record. See Section VI.C.1. The ALJ also supported his conclusions that Plaintiff improved with conservative treatment, including injections, medications, and foot braces. See Section VI.C.2.a. Furthermore, as previously discussed, the ALJ was specific in discussing Plaintiff's activities of daily living, many of which are inconsistent with the opinions of Drs. Deputy and Al-Qudah. See id.

As a final matter, Plaintiff takes issue with the ALJ's RFC which allows for frequent handling and fingering. ECF No. 19, at 4. The ALJ specifically addressed this issue in her decision stating

> Specifically with regard to the [Plaintiff's] allegations of his hands, those allegations, considered in light of the vague references to decreased sensation in a glove distribution but no deficits of upper extremity strength and inconsistent findings with regard to deep tendon reflexes, as well as [Plaintiff's] lack of recent reports of upper extremity symptoms, supports [the RFC including] frequent handling and fingering . . . .

R. 28. The ALJ discussed the medical records in detail to support her determination here. R. 27–28. The ALJ mentioned medical records from 2015 that showed Plaintiff had normal UE strength, fine sensation, and deep tendon reflexes. R. 27; see Section VI.C.1. However, she also mentions that later examinations showed decreased sensation to vibration and pinprick, absent deep tendon reflexes, but normal motor strength in Plaintiff's UE. R. 27; see Section VI.C.1. Finally, the ALJ noted that recent examinations of Plaintiff contained no reports from Plaintiff of difficulty using his hands. R. 28, 504 (March 14, 2016, no weakness in hands). It is not this Court's role to reweigh conflicting evidence and substitute its judgment for the ALJ's. See Johnson, 434 F.3d at 653.

In conclusion, the ALJ acknowledged that Drs. Deputy and Al-Qudah have treated Plaintiff and are specialists. The ALJ discussed evidence throughout the relevant period that was inconsistent with the opinions of Drs. Deputy and Al-Qudah on Plaintiff's limitations. As noted above, the ALJ is not required to explicitly list and assess each regulatory factor, see Pinson, 2009 WL 763553, at *10, as long as she gives sufficient reason to support the weight she has assigned to a particular medical opinion. See Dunn, 607 F. App'x at 267. Here, the undersigned concludes that the ALJ has provided substantial evidence to support her assignment of little weight to the opinions of Drs. Deputy and Al-Qudah, and her RFC determination is supported by substantial evidence.

## VII.   RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for DIB contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 18] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 22] be **GRANTED**,

the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 26th day of March, 2019.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE